**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

U.S. DISTRICT COURT
EASTERN DISTRICT - WI
FILED

2026 OCT -9 P 4: 19

CLERK OF COURT

QUANTELL COLLIER,
Plaintiff,

v.

FROEDTERT THEDACARE HEALTH, INC.,
COMMUNITY MEMORIAL HOSPITAL OF MENOMONEE FALLS, INC.,
MATTHEW WORMAN,
DAMOND HOLT,
VALERIE MILNE, and
TERRY LUX,
Defendants.

Case No. 26-C 1889
**JURY DEMAND**

**COMPLAINT AND JURY DEMAND**

**NATURE OF THE ACTION**

1. Plaintiff Quantell Collier is a Black man who worked as an EA2 Floor Technician in the Environmental Services department at Froedtert Menomonee Falls Hospital. He brings this action under 42 U.S.C. Section 1981 and Wisconsin law.

2. In November 2024, Plaintiff told Defendant Matthew Worman, Director of Support Services, that he was trying to meet with the hospital President about racism. Worman laughed, said, using a racial slur, that the President does not deal with Black employees, and warned that if Plaintiff kept pursuing the issue he would be fired the next day.

3. Plaintiff kept pursuing it. At about 5:30 a.m. on December 13, 2024, Plaintiff and a coworker emailed a written complaint to EVS leadership and the hospital President, with a copy to the U.S. Equal Employment Opportunity Commission. That afternoon, about nine hours later, Plaintiff was sent home under a claimed "investigation" and never allowed to work again. Defendants formally terminated him on December 20, 2024.

4. The written reason for the termination was that Plaintiff had been in the Hospital Administration offices on December 12, 2024, "waiting around to confront someone." Plaintiff was there because cleaning those offices was his assigned work that day. He had spent the prior two weeks trying to meet with the hospital President to report racial discrimination.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. Sections 1331 and 1343(a)(4).

6. This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. Section 1367(a). Those claims arise from the same employment, supervisors, and termination as the federal claims and form part of the same case or controversy.

7. Venue is proper in this District under 28 U.S.C. Section 1391(b). The events giving rise to these claims occurred at Froedtert Menomonee Falls Hospital in Waukesha County, Wisconsin, and Defendants reside or do business in this District.

**PARTIES**

8. Plaintiff Quantell Collier resides in Milwaukee, Wisconsin. He is Black. Defendants employed him as an EA2 Floor Technician in the Environmental Services ("EVS") department at Froedtert Menomonee Falls Hospital from July 8, 2024 until his termination.

9. Defendant Froedtert ThedaCare Health, Inc. ("Froedtert") operates the health system that includes Froedtert Menomonee Falls Hospital. Its principal office is at 9200 W. Wisconsin Avenue, Milwaukee, Wisconsin 53226. Froedtert issued the human-resources policies, dismissal record, and appeal procedure that governed Plaintiff's employment.

10. Defendant Community Memorial Hospital of Menomonee Falls, Inc. ("Community Memorial") operates, on information and belief, Froedtert Menomonee Falls Hospital, W180 N8085 Town Hall Road, Menomonee Falls, Wisconsin 53051.

11. Froedtert and Community Memorial (the "Hospital Defendants") jointly employed Plaintiff and jointly controlled the terms of his employment, including the decision to terminate it.

12. Defendant Matthew Worman is Director of Support Services for Froedtert's Community Hospital Division and had authority over the EVS department at Froedtert Menomonee Falls Hospital at all relevant times. He is sued in his individual capacity.

13. Defendant Damond Holt was, at all relevant times, an EVS Supervisor at Froedtert Menomonee Falls Hospital and Plaintiff's immediate leader. He is sued in his individual capacity.

14. Defendant Valerie Milne is the Human Resources Business Partner for Froedtert's Community Hospital Division, which includes Froedtert Menomonee Falls Hospital. She is sued in her individual capacity.

15. Defendant Terry Lux was, at all relevant times, the President of Froedtert Menomonee Falls Hospital. She is sued in her individual capacity.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Employment

16. Plaintiff began work on July 8, 2024. His regular schedule was third shift, 10:30 p.m. to 7:00 a.m.

17. In late 2024 the EVS department was short-staffed. Plaintiff regularly agreed to pick up extra shifts, including 16-hour double shifts covering second and third shift.

18. Before December 13, 2024, Plaintiff never received any corrective action, documented counseling, or warning. EVS leadership praised his work.

**B. Plaintiff's Reports of Racial Discrimination**

19. Before his termination, Plaintiff told Defendant Milne on numerous occasions that he was experiencing racial discrimination in EVS.

20. To Plaintiff's knowledge, Milne took no action on any of those reports.

**C. Worman's November 2024 Statements and Threat**

21. In November 2024, Plaintiff told Worman that he was trying to speak with Defendant Lux about the racism he was experiencing. Worman laughed at him.

22. In front of Plaintiff and three other EVS employees, Worman said, in words or substance, "Terry Lux doesn't deal with niggers."

23. Worman also told Plaintiff, in words or substance, that Milne "hates niggers just as much," that she "would never believe anything a nigger says," and that she would always side with Worman over a "nigger" no matter what.

24. Worman then warned Plaintiff, in words or substance, that if he kept pursuing the issue, "his black ass" would be fired the next day.

25. Worman made these statements in November 2024, weeks before the Joint Complaint described below.

26. Plaintiff did not stop. He continued trying to meet with Lux to report racial discrimination.

**D. Plaintiff's Attempts to Reach the Hospital President**

27. For at least two weeks before December 12, 2024, Plaintiff went to the Hospital Administration offices nearly every morning after finishing overnight shifts of 12 hours or more, hoping to speak with Lux. He often waited for hours.

28. Plaintiff also emailed Lux asking to meet. His last email to Lux said he wanted to discuss the racism he was experiencing at work.

29. Lux never met with Plaintiff and never answered his emails.

**E. December 12, 2024**

30. On December 12, 2024, the Hospital Defendants called Plaintiff in to work second shift on top of his scheduled third shift. He worked from about 2:30 p.m. on December 12 to about 6:00 a.m. on December 13.

31. His assignment included the Lower Level clean run, the pharmacy, and the kitchen.

32. The Lower Level clean run includes the Hospital Administration offices, including Lux's office. The run is ordinarily done on second shift, at about the time of day Plaintiff did it. EVS employees routinely cleaned the Administration offices on second shift as part of this run without being questioned or disciplined.

33. At about 3:30 p.m., Plaintiff entered the Administration offices to clean them. He told the Executive Assistant there that he was there to clean. That was true.

34. The Administration area includes at least six offices, six cubicle areas, a kitchen, a bathroom, a meeting room, and several hallways. Plaintiff left at about 3:55 p.m. Twenty-five minutes is a short time to clean that area.

35. The equipment used to clean the Administration offices is kept in the Administration area.

36. Plaintiff finished the rest of his 16-hour shift. No one raised any concern with him about the Administration offices during the roughly 14 hours he kept working.

**F. The December 13, 2024 Joint Complaint**

37. At about 5:30 a.m. on December 13, 2024, while still on shift, Plaintiff and coworker Jeremy McGee sent a joint written complaint by email (the "Joint Complaint") to Worman, Holt, EVS Manager John "Jack" Lewis, and Lux, with a copy to the U.S. Equal Employment Opportunity Commission.

38. The Joint Complaint described the treatment of Plaintiff and McGee, both Black employees, as a civil-rights issue. It reported Holt's lying, manipulation, favoritism, threats, and aggression, and stated that they had documented evidence.

**G. Removal From Work and Termination**

39. Plaintiff was scheduled to work another double shift on December 13, 2024. When he reported at about 2:30 p.m., about nine hours after the Joint Complaint was sent, he was told there was an "investigation" and was sent home.

40. Before the Joint Complaint was sent, no one had raised any concern with Plaintiff about his work on December 12.

41. Plaintiff was never allowed to work again.

42. On December 20, 2024, the Hospital Defendants formally terminated Plaintiff through an "Introductory Period Dismissal" record that names Holt as his Immediate Leader.

43. The dismissal record classifies the termination as "Staff not meeting performance expectations" and gives December 12, 2024 as the incident date. The only conduct it describes is Plaintiff's time in the Administration offices on December 12.

44. The record states that Plaintiff's time in the Administration offices "was perceived as him either wasting time or waiting around to confront someone."

45. On information and belief, the "someone" was Lux, whom Plaintiff had been trying for two weeks to meet to report racial discrimination.

46. The record's stated reasons are false:

(a) It calls Plaintiff's assignment the "Lower Level trash run." No such assignment exists. The assignment is the Lower Level clean run, which includes cleaning the Administration offices.

(b) It states the Administration offices are cleaned monthly, on weekends or third shift. In practice, EVS employees cleaned them on second shift as part of the Lower Level clean run.

(c) It states Plaintiff got into the offices "by providing false information." Plaintiff said he was there to clean, which was true. The same record admits he collected the trash from those offices.

(d) It states the work does not take 25 minutes. The area takes longer than that to clean.

(e) It faults Plaintiff for not having a vacuum, high-duster, or cart. The equipment for those offices is kept in the Administration area.

47. The Hospital Defendants did not raise the December 12 "incident" with Plaintiff during the roughly 14 hours he kept working after it. They acted on it only after the Joint Complaint.

48. On information and belief, the report about Plaintiff's presence in the Administration offices came from Lux or her office. After receiving the Joint Complaint, Lux participated in, requested, or approved the decision to remove and terminate Plaintiff.

49. On information and belief, Holt, as Plaintiff's Immediate Leader, and Worman, as Director over EVS, each participated in, recommended, approved, or caused the decisions to remove Plaintiff from work on December 13 and terminate him on December 20, 2024.

50. On information and belief, Milne, as the Human Resources Business Partner for the Community Hospital Division, participated in preparing, reviewing, or approving the dismissal record and the decision to terminate Plaintiff.

51. After he was removed from work, Plaintiff told Milne and Lewis that his removal was about racism and nothing else.

**H. The Appeal**

52. Froedtert's Staff Appeal Process Policy (No. 549) covers staff in their introductory period. For termination appeals, it requires the Vice President of Human Resources or a designee to hear the appeal and give a written decision within seven business days after the appeal meeting.

53. On or about December 23, 2024, Plaintiff submitted a written appeal of his termination, raising race discrimination and retaliation.

54. Defendants denied the appeal, telling Plaintiff there was nothing they could do.

**I. Holt's Physical Assault**

55. During Plaintiff's employment in 2024, Holt punched Plaintiff in the back.

56. Holt struck Plaintiff intentionally and with intent to cause bodily harm.

**J. Damages**

57. Defendants' conduct caused Plaintiff lost wages and benefits, emotional distress, and humiliation.

58. Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights.

**CLAIMS FOR RELIEF**

**COUNT I - RETALIATION IN VIOLATION OF 42 U.S.C. § 1981 (ALL DEFENDANTS)**

59. Plaintiff incorporates paragraphs 1 through 58.

60. Section 1981 gives all persons the same right to make and enforce contracts, including employment contracts, as is enjoyed by white citizens, and prohibits retaliation against those who oppose race discrimination.

61. Plaintiff engaged in protected activity by: (a) reporting racial discrimination to Milne; (b) seeking to meet with Lux and emailing her about racism; (c) sending the Joint Complaint on

December 13, 2024; and (d) telling Milne and Lewis, and stating in his appeal, that his termination was about racism.

62. Each Defendant knew of Plaintiff's protected activity. Worman knew by November 2024. Milne knew from Plaintiff's reports to her. Lux knew from Plaintiff's emails. Worman, Holt, and Lux were sent the Joint Complaint on the morning of December 13, 2024.

63. Defendants took adverse actions against Plaintiff: removing him from work on December 13, 2024; terminating him on December 20, 2024; and denying his appeal.

64. Plaintiff's protected activity was the but-for cause of those actions. This is shown by Worman's November 2024 threat to fire Plaintiff if he kept pursuing his complaints; Plaintiff's removal within hours of the Joint Complaint; a dismissal record that faults him for "waiting around to confront someone" in the offices of the President he was trying to reach; stated reasons that are false; and his clean record.

65. Worman, Holt, Milne, and Lux are each individually liable because each personally participated in, caused, or approved the retaliation.

66. Plaintiff suffered the damages described above as a result.

**COUNT II - RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981 (ALL DEFENDANTS)**

67. Plaintiff incorporates paragraphs 1 through 58.

68. Plaintiff is Black.

69. Defendants removed Plaintiff from work and terminated his employment because of his race.

70. Worman, who had authority over EVS, expressed racial hostility toward Plaintiff in November 2024. He tied the threatened firing to Plaintiff's race and said that senior hospital leadership would not deal with, or believe, Black employees.

71. Defendants did not question or discipline other EVS employees who cleaned the Administration offices on second shift as part of the Lower Level clean run.

72. But for Plaintiff's race, Defendants would not have removed or terminated him.

73. Worman, Holt, Milne, and Lux are each individually liable because each personally participated in, caused, or approved the discriminatory removal and termination.

74. Plaintiff suffered the damages described above as a result.

**COUNT III - BATTERY UNDER WISCONSIN LAW (DEFENDANT HOLT)**

75. Plaintiff incorporates paragraphs 1 through 58.

76. During Plaintiff's employment in 2024, Holt intentionally struck Plaintiff in the back without his consent.

77. Holt acted with intent to cause bodily harm.

78. Holt's contact was harmful and offensive and caused Plaintiff damages.

79. Holt acted maliciously or in intentional disregard of Plaintiff's rights, entitling Plaintiff to punitive damages. Milne)

**COUNT IV - DEFAMATION UNDER WISCONSIN LAW (HOSPITAL DEFENDANTS, HOLT, AND MILNE)**

80. Plaintiff incorporates paragraphs 1 through 58.

81. The Introductory Period Dismissal record states that Plaintiff "accessed the Administrative Offices by providing false information" and that his conduct violated Froedtert's Code of Corporate Ethics Policy, which requires employees to work with "integrity, honesty, fairness and diligence."

82. Those statements are false. Plaintiff told the Executive Assistant he was there to clean, which was true, and cleaning the Administration offices was his assigned work.

83. The statements accuse Plaintiff of lying and dishonesty in his work. They tend to harm his reputation and to deter others from employing him.

84. On information and belief, Holt and Milne wrote, reviewed, or approved the dismissal record. Defendants published it to Froedtert managers and human-resources staff, including those involved in Plaintiff's removal, termination, and appeal, and placed it in his personnel file.

85. Defendants made and published the statements knowing they were false, or with reckless disregard for whether they were true, and for the improper purpose of justifying a retaliatory and discriminatory termination. Any privilege that might otherwise apply was abused and lost.

86. The Hospital Defendants are liable for statements their managers and human-resources staff made within the scope of their employment.

87. The statements caused Plaintiff damage to his reputation, emotional distress, and humiliation.

88. Defendants acted maliciously or in intentional disregard of Plaintiff's rights, entitling Plaintiff to punitive damages.

**PRAYER FOR RELIEF**

Plaintiff asks the Court to enter judgment against Defendants and award:

(A) A declaration that Defendants violated 42 U.S.C. Section 1981;

(B) Reinstatement to his EA2 Floor Technician position with full seniority, or front pay instead;

(C) Back pay, lost benefits, and prejudgment interest;

(D) Compensatory damages for emotional distress, humiliation, and other non-economic harm;

(E) Punitive damages against each Defendant to the extent permitted by law;

(F) Damages for battery against Holt and for defamation, including punitive damages to the extent permitted by law;

(G) Costs and such reasonable attorney fees, if any, as applicable law authorizes; and

(H) Any other relief the Court finds just.

**JURY DEMAND**

Plaintiff demands a jury trial on all issues so triable.

**SIGNATURE**

Respectfully submitted,

____________________________________

Quantell Collier, Plaintiff, pro se
333 W. Brown Deer Road, Unit G563
Milwaukee, Wisconsin 53217
(414) 242-0690
Email: qun24@proton.me
Dated: ______________________________

**VERIFICATION**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, except as to matters stated on information and belief, which I believe to be true.

Executed on ____________________, 2026.

____________________________________

Quantell Collier



Case 2:26-cv-01889-BHL Filed 10/09/26 Page 12 of 12 Document 1